**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Docket No. 1:21-cr-75-MR-WCM** |
| ) | |
| **v.** ) | **BILL OF INFORMATION** |
| ) | |
| **SPADE K. BAILLY** ) | **Violations:** |
| ) | **18 U.S.C. § 371** |
| ) | **42 U.S.C. § 7413(c)(2)(C)** |

### THE UNITED STATES CHARGES:

At all times material to this Bill of Information:

#### Relevant Individuals and Entities

1. At all times relevant to this Bill of Information, SPADE K. BAILLY was an employee of Spartan Diesel Technologies (hereinafter "Spartan"), and then its successor entities, Patriot Systems LLC" and "Patriot Diagnostics" (hereinafter, collectively, "Patriot"). He was also the owner of B2 Enterprises LLC (hereinafter "B2"), Patriot's successor entity.

2. Spartan was incorporated in April 2010. In early 2017, Spartan was dissolved after Patriot's owner purchased Spartan's inventory, hired Spartan's sales and service employees, and continued selling Spartan's products until early 2018. In July 2018, SPADE K. BAILLY created B2, which purchased Patriot's inventory, hired their sales and service employees, and continued selling Patriot's products until December 2018, when SPADE K. BAILLY dissolved B2.

3. At all times relevant to the criminal charge in this Bill of Information, Patriot and B2 maintained sales and service operations in Henderson County, North Carolina.

#### Background

4. The purpose of the Clean Air Act is, among other things, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." ·42 U.S.C. § 7401(b)(1); *see also* 42 U.S.C. § 7470. In enacting the Clean Air Act, Congress found that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2). Congress instructed the Environmental Protection Agency (EPA) to establish regulations and standards to control emissions from motor vehicles which cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare. 42 U.S.C. § 7521(a)(1).

*1 of 3*

5. The Clean Air Act regulates "mobile sources," which include motor vehicle engines and off-road vehicles and engines. Pursuant to 42 U.S. Code §§ 7521- 7554, and the regulations promulgated thereunder, the U.S. Environmental Protection Agency (EPA) established standards limiting the emission of air pollutants from various classes of motor vehicle engines. Heavy duty diesel engines were one such class and were subject to the emissions regulations found at 40 C.F.R. Part 86, Subpart A. 42 U.S.C. § 7521(a)(3).

6. Pursuant to 42 U.S.C. § 7521(m)(1), the EPA was authorized to create regulations requiring manufacturers to install on-board diagnostic (OBD) systems on vehicles and engines to ensure that emission standards were met. The EPA thus enacted regulations that required manufacturers to install OBD systems on vehicles and engines, including heavy duty diesel trucks, "capable of monitoring all emission-related engine systems or components." 40 C.F.R. §§ 86.010-18.

7. Since model year 2008, all heavy-duty diesel trucks were required to be equipped with an OBD system. The OBD system is composed of electronics and sensors that monitor all emission-related engine systems and components. If an emissions-related malfunction or problem occurs, the OBD system causes a Malfunction Indicator/Check Engine Light to be illuminated in the vehicle's cabin. If the problem is not resolved, the OBD system could limit the top speed of the vehicle to as low as five miles per hour (an effect commonly referred to as "limp mode" or "power reduced mode"), providing an incentive for the vehicle's operator to seek repairs.

8. When a vehicle uses an illegal tuner, the software, or tune, allows it to run with increased horsepower and torque, and at normal speeds, without the hardware emission components installed on the engine. This results in significantly increased pollutant emissions released into the atmosphere. The EPA is aware of multiple types of illegal tuners and tunes. One example is a plug-in tuner, which is a vehicle emissions system defeat device that can be plugged into the vehicle's data link connector to the OBD and permit "on-the-fly" tuning. Plug-in tuners allow the driver to turn on and off at will the software modifications that manipulate the engine computer module and prevent the OBD from detecting a malfunction in the emission controls. Spartan, Patriot, and B2 bought and sold illegal plug-in tuners.

## COUNT ONE
### (Conspiracy to Defraud the United States and to Violate the Clean Air Act)

9. The allegations in paragraphs 1 through 9 of this Bill of Information are incorporated herein.

10. From in or about 2011 to in or about December 2018, in Henderson County, within the Western District of North Carolina, and elsewhere, the defendant,

**SPADE K. BAILLY,**

did knowingly and intentionally conspire and agree with other persons, known and unknown to the United States, to commit certain offenses against the United States, to wit: to defraud the United States by impairing, impeding, obstructing, and defeating the lawful functions of the federal government, that is, the Environmental Protection Agency's function to implement and enforce emissions standards for air pollutants for vehicles under the Clean Air Act by deceitful and dishonest means, and to violate the Clean Air Act by tampering with and rendering inaccurate monitoring devices required to be maintained by the Clean Air Act, in violation of Title 42, United States Code, Section 7413(c)(2)(C).

## <u>Manner and Means, and Overt Acts</u>

11. Spartan had previously been ordered to pay a civil penalty in the amount of $4,154,805 for violating section 203(a)(3)(B) of the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B), for selling at least 5,000 illegal vehicle emissions system defeat devices from 2011 through 2013, which it had purchased from a manufacturing company located in the State of Illinois.

12. SPADE K. BAILLY knew of Spartan's civil enforcement action and, from at least as early as 2017, he continued to sell and service Spartan's illegal products for Patriot. SPADE K. BAILLY also knew, from at least early 2018, of other EPA civil enforcement activity of yet another company, also owned by Patriot's owner, at the time when SPADE K. BAILLY had worked for Patriot.

13. SPADE K. BAILLY took control of Patriot in early 2018 and continued to purchase illegal tuners from the same Illinois manufacturing company that had sold them to Spartan and Patriot. Furthermore, SPADE K. BAILLY continued to sell said illegal vehicle emissions system "defeat devices" or "tuners" through internet and direct sales and other online vehicle aftermarket parts vendors, whom SPADE K. BAILLY knew were selling them to the ultimate users of said tuners, all with intent to evade vehicle emissions requirements. SPADE K. BAILLY thus conspired and agreed with other persons to defraud the United States and to violate the Clean Air Act.

14. All in violation of Title 18, United States Code, Section 371.


WILLIAM T. STETZER
ACTING UNITED STATES ATTORNEY


STEVEN R. KAUFMAN
ASSISTANT UNITED STATES ATTORNEY